<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **SEAN SUTTON,** | : | **Civil Action No. 13-5321 (MCA)** |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| **BOARD OF EDUCATION OF THE** | : | |
| **CITY OF PLAINFIELD** | : | |
| | : | |
| *Defendant.* | : | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court upon Defendant Board of Education of the City of Plainfield's Motion for Summary Judgment against Plaintiff Sean Sutton. Dkt. No. 29. Plaintiff Sean Sutton opposes the motion. Dkt. No. 34. There was no oral argument. Fed. R. Civ. P. 78. For the reasons set forth herein, Defendant's motion is **GRANTED**.[1]

I.     **BACKGROUND**

Plaintiff Sean Sutton ("Plaintiff" or "Sutton") is an African American male, who began employment with Defendant the Board of Education for the City of Plainfield ("Defendant" or "Board," or "District") on August 24, 1998 as an Assistant Custodian. Defendant's Statement of Undisputed Material Facts ("Def. Statement") ¶ 1, Dkt. No. 29-4. Sutton does not have a college degree. <u>Id.</u> ¶ 2. On January 14, 2002, Sutton was promoted from Assistant Custodian to Custodian/Fireman and transferred to the Buildings and Grounds Office, with a higher salary. <u>Id.</u>

---

[1] All disputed facts have been construed in Plaintiff's favor. Where Plaintiff disputes a fact without providing a specific citation to the record to support the denial, the Court accepts these facts as undisputed. <u>See</u> <u>Friedman v. Bank of Am., N.A.</u>, No. 09-2214, 2012 U.S. Dist. LEXIS 40587, at *15-16 n.2 (D.N.J. Mar. 26, 2012).

¶ 4.  On June 30, 2005, Sutton's title was changed to General Maintenance and his salary was again increased.  Id. ¶ 5.  In November 2009, Sutton was promoted to Assistant Coordinator in the District Facilities and Grounds Department, effective from November 18, 2009 through June 30, 2010, with an increased salary to $79,430.00.  Id. ¶ 6.  He was not eligible for overtime in that position.  Id. ¶ 7.

On May 3, 2011, the Board adopted a recommendation to initiate a Reduction In Force ("RIF") in certain categories of employment, including Plaintiff's position.  Id. ¶ 8.  On July 1, 2011, Sutton was approved for rehire by the Board in his former position of General Maintenance Service, at an annual base salary of $62,393.00.  Id. ¶ 10.[2]  In this position, Sutton was performing the same job duties as he had previously performed as Assistant Coordinator, but was now eligible for overtime compensation.  Id. ¶ 12.

### a. Energy Education Specialist Position

On July 5, 2011, the Board entered into a contract with Energy Education Inc. to implement an energy conservation program in the District.  Id. ¶ 13.  Under the contract, the Board agreed to hire an Energy Education Specialist ("Energy Specialist") who would work full-time and exclusively to implement the program.  Id. ¶ 15.  The contract did not require the Board to adopt a certain salary for the Energy Specialist, but only required that it be sufficient to attract and retain qualified people for the positon.  Id. ¶ 16.  On July 26, 2011, the Board adopted a job description for the Energy Specialist position, whose salary was left open, though limited to the range "[a]ccording to PEA Salary Guide" as set forth in the Collective Bargaining Agreement.  Id. ¶ 17; Cert. of Derlys M. Guttierez ("Def. Cert."), Ex. 10, Dkt. No. 29-3.

---

[2] Plaintiff contends that the school had no choice to recall him based on his prior tenured position. Pl. Resp. ¶ 10, Dkt. No. 33.  This statement, however, is not supported by any citation to the record, or affidavit.  As a bare legal conclusion, it does not present a genuine issue of material fact.

On June 27, 2011, the Board posted a job opening for the position.  Def. Statement ¶ 18. The posting did not specify a salary for the position but said it would be "[i]n accordance with the PEA Salary Guide."  See Def. Cert. Ex. 11.  Sutton applied for the position, and he was interviewed on September 28, 2011 along with three other candidates.  Id. ¶ 19.  The interview committee was comprised of: the District's Assistant Business Administrator, Yolanda Henry ("Henry"); Supervisor of the Facilities and Grounds Department, Harold Gee ("Gee"); the District's Business Administrator, Gary Ottmann ("Ottmann"); and Energy Education, Inc.'s representative Mervin Reed ("Reed").  Id. ¶ 20.  Henry and Gee are both African American.  Id. ¶ 21.  The committee unanimously scored Sutton as the highest of the four candidates it interviewed.  Id. ¶ 22.  Interim Superintendent Belin-Pyles ("Superintendent Belin-Pyles"), who is African American, makes all final employment recommendations to the Board.  Id. ¶¶ 23-24.  At the District's October 18, 2011 Board Meeting, Sutton's appointment at a salary of $83,699.00 was on the agenda but apparently was pulled by Superintendent Belin-Pyles.  See Pl. Statement ¶ 26; Def. Cert. Ex. 15.[3]  All Board members were African American.  Def. Statement ¶ 29.[4]

On November 16, 2011, the District offered Sutton the Energy Specialist position at his current salary of $63,000, which is in accordance with the salary guideline for "non-instructional staff-1" as contained in the CBA. Def. Statement ¶¶ 30-31; Def. Cert. Ex. 17, CBA, Non-Instructional Professional Staff #1 Salary Guideline, at 41.  Mr. Ottmann told Sutton that the reason for the offer at his current salary, as opposed to $83,699, was that the Board members were not

---

[3] Plaintiff claims that at the October 18, 2011 meeting, the Board passed a resolution retaining Plaintiff for the Energy Specialist position.  Pl. Statement, ¶ 27.  This is not supported by the record.  In fact, a review of the Meeting Minutes of the Board shows that approval of Sutton for the position was pulled from the agenda. See Def. Cert. Ex. 15.
[5] Campbell, the Board's President, is also African American.  Def. Statement ¶¶ 86-87.  Campbell has never spoken to Sutton.  Id. ¶ 88.

comfortable paying anyone that type of salary, which was higher than many teachers in the District, who, unlike Sutton, possessed college degrees.  Id. ¶ 32; Def. Cert. Ex. 1, Pl. Dep. T68:18-T69:25, T91:15-22 and T145:7-146:5; Id. Ex. 17; Id. Ex. 18.  On December 1, 2011, Sutton rejected this offer.  Id. ¶ 34; Def. Cert. Ex. 19.

On January 13, 2012, the Board reposted the Energy Specialist position, listing the salary again to be "in accordance with the PEA Salary Guide- Non-Instructional-1" in the CBA.  Def. Statement ¶ 35; Def. Cert. Ex. 21.  Sutton did not reapply for this position.  Def. Statement ¶ 36. The interview committee for the vacancy was composed of the same four people.  Id. ¶ 37.  Out of five total candidates, Jeffrey Strangio ("Strangio"), a Caucasian, was the top scoring candidate,[5] followed by Del Pera Baylis ("Baylis"), an African American woman.  Id. ¶ 38.  On February 6, 2012, Superintendent Belin-Pyles conducted second interviews with Strangio and Baylis.  Id. ¶ 39. On February 7, 2012, Strangio was offered the Energy Specialist position.  Id. ¶ 40.  At his deposition, Sutton testified that he did not know the salary amount offered to Strangio.  Id. ¶ 41; Def. Cert. Ex. 1.[6]  Strangio declined the offer, and it was then offered to Baylis, who also declined on March 16, 2012.  Def. Statement ¶ 42.

Because the position was still vacant, on March 29, 2012, the Board reposted another vacancy announcement for the Energy Specialist position for a third time.  Id. ¶ 44.  This announcement differed from the two preceding advertisements in that the pay rate would be "determined by the district."  Id. ¶ 45; Pl. Statement ¶ 45; Def. Cert. Ex. 24.  Sutton did not reapply

---

[5] Plaintiff asserts that Strangio was continually brought back for interviews and attempted to be given jobs ahead of minority qualified candidates.  See Pl. Statement Uncontested Facts ("Pl. Second Statement") ¶ 25, Dkt. No. 35.  Plaintiff also claims that Ottmann favored Caucasians for positions over qualified minority applicants.  Id.  Plaintiff's claims are not support by any citation to the record, or an affidavit.

[6] Plaintiff claims that Strangio was offered a higher salary than him but provides no citation to any evidence in the record to support this proposition.  Pl. Second Statement ¶ 25.

for the position after this new posting. Def. Statement ¶ 46. The interview committee interviewed candidates on May 3, 2012, and rated Michael Pate as the highest. Id. ¶ 47. At a Board meeting on May 15, 2012, the Board adopted a resolution officially determining the salary range for the Energy Specialist position in the range of $53,389.00 to $72,615.00 in order to attract a candidate to the position. Id. ¶ 48. On June 19, 2012, over six months after Sutton had declined the position, the Board approved the hiring of Michael Pate at a salary of $72,000.00. Id. ¶ 49.

### b.    Plaintiffs' Medical Leave, Transfer, and the District's Accommodation

On or about March 26, 2012, Sutton injured his knee and ankle while at work. Id. ¶ 53. On May 8, 2012, Sutton was diagnosed with a strain and dysfunction to his right knee and placed on light work duty by his physician for three weeks—which prohibited him from standing or working more than three hours intermittent, or lifting more than ten pounds. Id. ¶ 54. On June 7, 2012, Sutton underwent knee surgery and was placed out of work for approximately four to six weeks. Id. ¶ 55. On July 9, 2012, the Board received a letter from Dr. Andrew M. Hutter, M.D., of the Center for Orthopedics ("Dr. Hutter"), placing Sutton on medical leave effective July 6, 2012 until further notice. Id. ¶ 56. On July 20, 2012, Sutton advised Ottman, Business Administrator, and Gee, his supervisor, that he would be returning to work on July 23, 2012 and requested sedentary duty due to the restrictions placed on him by his doctor. Id. ¶ 57.

When Plaintiff returned, he was advised to report to the Building and Grounds office, which was located on the second floor with no elevator access. Id. ¶¶ 58, 61. On or about July 23, 2012, the Board received another letter from Dr. Hutter explaining that Sutton's work restrictions now included "no repetitive stair climbing, no ladders, no carrying great than 10 lbs, and no kneeling." Id. ¶ 59. Based on these restrictions, Plaintiff could not perform the job duties for the General Services job including but not limited to loading and unloading materials and

delivering and assisting the grounds crew with grounds maintenance. Id. ¶ 60. On July 26, 2012, Plaintiff was informed that he was being temporarily assigned to the Plainfield High School Library (the "Library") because there was no elevator in his current location. Id. ¶ 62.[7] Besides the physical activities he could not perform per his doctor's instructions, Plaintiff's job responsibilities did not materially change during his temporary reassignment. Id. ¶ 65. Sutton's title and compensation did not change either. Id. ¶ 66.

On August 15, 2012, Sutton emailed Carletta Jones ("Jones"), District Coordinator of Human Resources,[8] to express his dissatisfaction with his reassigned location and that he felt the reassignment constituted retaliation. Id. ¶ 67. Jones immediately responded and scheduled a meeting for August 28, 2012. Id. ¶ 68. At the August 28, 2012 meeting, Jones informed Sutton that his relocation was based upon his physician's recommendation of sedentary duty and other work restrictions. Id. ¶ 69.

On September 4, 2012, Dr. Hutter again confirmed via letter that Sutton could only engage in restricted work duties that limited stair climbing. Id. ¶ 71; Def. Cert. Ex. 39. On October 1, 2012, Jones sent Sutton a letter reiterating that his reassignment to the Library was to accommodate the work restrictions specified in his doctor's letter. Def. Statement ¶ 73. Sutton remained on restricted duty and continued to work in the Library until December 31, 2012. Id. ¶ 76. While temporarily reassigned, Sutton's salary and benefits remained the same. Id. ¶ 77.

---

[7] At his deposition, Plaintiff testified that the library had "no light fixtures, no air, no desk . . . [t]he elevator had been down and had numerous violations by the State of New Jersey . . . so it had been down the whole summer." Pl. Statement ¶ 62. Plaintiff does not cite to any evidence to support this assertion.

[8] Jones is also African American. Def. Statement ¶ 91. Sutton apparently heard from another employee that Jones said that the only reason Sutton got a job was because of his race. Id. ¶ 92. Jones, however, never made such comment directly to Sutton. Id. ¶ 93.

On December 31, 2012, Sutton was given a second medical leave based on a note from Dr. Shanthi Chezian, M.D., from Behavioral Medicine Associates, P.A. ("Dr. Chezian"), stating that, due to the severity of Plaintiff's illness, he would be out of work from January 2, 2013 to March 22, 2013.  Id. ¶ 78.  While out on leave, on January 29, 2013, the Board received three additional requests for medical leave to be extended beyond March 22, 2013 based on the fact that he was having another surgery.  Id. ¶ 79.  Sutton was out of work on leave from January 2, 2013 to July 31, 2013.  Id. ¶ 80.  Sutton did not lose any salary or benefits during this time.  Id. ¶ 81.

   **c.      Plaintiff's Charges of Discrimination with the EEOC**

On March 12, 2012, Sutton filed a Charge with the EEOC ("March 2012 claim") alleging race discrimination under Title VII of the Civil Rights Act of 1964 and disability discrimination under the Americans with Disability Act in connection with the Board's June 2011 RIF and the Board's job offer for the Energy Specialist position.  Id. ¶ 102; Def. Cert. Ex. 44.  On or about October 1, 2012, Sutton filed a second Charge with the EEOC ("October 2012 claim") alleging retaliation against him in violation of Title VII for filing the aforementioned March 14, 2012 EEOC charge.  Def. Statement ¶ 102.  Sutton claimed that after he filed the EEOC charge, the Board retaliated against him by adversely changing the terms and conditions of his employment by assigning him to the Library.  Id.  On February 11, 2013, the EEOC issued dismissals and right-to-sue letters regarding Plaintiff's the March 2012 claim and the October 2012 claim.  Id. ¶ 104.  These letters informed Sutton that he had ninety days from receipt of the letters to file a lawsuit against the District pursuant to Title VII.  Id. ¶ 105.

On or about November 15, 2012, an unfair labor practice charge was filed on Sutton's behalf for hostile work environment based upon the offer made to him for the Energy Specialist position and on his reassignment to the library.  Id. ¶ 106.  On March 19, 2013, as a compromise

and accord between Sutton and the Board, it was agreed that Sutton would be removed from the library and would report back to work at the Buildings and Grounds Office when medically cleared to return to unrestricted work by his physician.  Id. ¶ 107.  This agreement was fulfilled when Plaintiff was medically cleared to return to work on July 31, 2013.  See Def. Cert. Ex. 42.

### d.      The Instant Lawsuit

On July 26, 2013,[9] Sutton filed a two-count Complaint in the Superior Court, Law Division, Union County asserting race discrimination against the Board under 42 U.S.C. § 1981 and retaliation under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann § 10:5-1, et seq.  See Notice of Removal, Ex. A, Dkt. No 1.  On September 5, 2013, the Board removed the Original Complaint to this Court.  Id.  On September 13, 2013, Defendant filed an Answer. Dkt. No. 3.  The parties engaged in discovery, and on May 8, 2015, Defendant moved for summary judgment.  Dkt. No. 29.

Plaintiff contends that on August 21, 2012, he filed an Amended Complaint in state court prior to Defendant's removal and served a copy on the Board.  Pl. Statement ¶ 108.[10]  The Amended Complaint adds a § 1983 claim under Count One for racial discrimination and appears to add a third count for retaliation under § 1983.  See Am. Compl., Count Three.

---

[9] This filing occurred more than ninety days from the date of the EEOC February 11, 2013 right-to-sue letter.  Accordingly, any claims under Title VII or the ADA would appear to be time-barred.
[10] Defendant argues that it was not properly served with the Amended Complaint prior to removal, and that the first time it received a copy was when Plaintiff filed it as an attachment to his opposition to summary judgment on September 24, 2015.  See Def. Reply at 1-2, Dkt. No. 37. Defendant may have a colorable claim regarding improper service of the Amended Complaint. Nonetheless, Defendant, in their papers, address the new claims, do not suggest that any further discovery would be necessary, and seek dismissal of all claims, old and new.  As such, in the interests of justice, given the liberal standard for amendments to pleadings, and the lack of prejudice to Defendant, the Court will consider the new § 1983 claims in the Amended Complaint. See Am. Compl., Dkt. No. 32, Ex. A.

II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. Further, the nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates a genuine issue of material fact. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 249 (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). In conducting a review of the facts, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. Hip Heightened Indep. & Progress, Inc. v. Port Auth. of New York & New Jersey, 693 F.3d 345, 351 (3d Cir. 2012). Accordingly, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party.

See Brooks v. Kyler, 204 F.3d 102, 105 n.5 (3d Cir. 2000) (citing Anderson, 477 U.S. at 249); Big Apple BMW v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   ANALYSIS

### A.   Count I—Racial Discrimination

In Count One, Plaintiff seeks relief under 42 U.S.C. §§ 1981 and 1983 for racial discrimination in hiring.[11]

### i.   Plaintiff's Racial Discrimination Claim Under § 1981

Plaintiff seeks declaratory, injunctive and monetary relief "to redress the deprivation of rights secured to Plaintiff by . . . 42 U.S.C. § 1981 providing for the redress of deprivation of the right to make and enforce contracts."  Am. Compl., Count One.

Defendant argues that Plaintiff's claim for racial discrimination under § 1981 should be dismissed because the statute does not afford Plaintiff a private right of action against Defendant, a state actor.  The Court agrees.

Section 1981 prohibits discrimination on the basis of race in making and enforcing contracts.  See 42 U.S.C. § 1981.  The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Id.  "Section 1981 offers relief

---

[11] For the first time in his Opposition brief, Plaintiff contends that "his race was a determinative factor in the Board's decision to reduce in force Plaintiff," apparently referring to the May 3, 2011 RIF.  See Pl. Opp. Br. at 5, Dkt. No. 34.  It is also an unusual theory since Plaintiff was rehired two months later.  However, the statute of limitations for filing a claim under § 1983 for an alleged wrongful termination or other types of discrete acts such as reduction in compensation is two years.  See O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).  Here, the RIF that caused Plaintiff's termination occurred on May 3, 2011, and the re-hire occurred on July 1, 2011, more than two years before Plaintiff filed his Complaint or Amended Complaint in state court.  Thus, these claims appear to be barred.  In any event, they are not even pled in the Original or Amended Complaint and are therefore not before the Court.

when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).

The law in the Third Circuit is clear: "[n]o private right of action lies against a state actor under § 1981." Ford v. SEPTA, 374 F. App'x 325, 326 (3d Cir. 2010) (internal citation omitted). This is so, however, because "in promulgating § 1983 over a century ago, [Congress] established that section as the exclusive remedy for violations of § 1981 by state actors." McGovern v. City of Phila., 554 F.3d 114, 121 (3d Cir. 2009). Thus, "while § 1981 creates rights, § 1983 provides the remedy to enforce those rights against state actors." Id. at 116 (emphasis in original); see also Lande v. City of Bethlehem, 457 F. App'x 188, 193 (3d Cir. 2012).

In light of the Third Circuit's holding in McGovern, Plaintiff cannot sustain an action against Defendant Board of Education of the City of Plainfield, a state actor, under § 1981. Accordingly, the Court grants Defendant's Motion for Summary Judgment with respect to the claim in Count I against Defendant pursuant to § 1981.

### ii.    Plaintiff's Racial Discrimination Claim Under § 1983

In the Amended Complaint, Plaintiff also seeks to recover for the deprivation of rights secured to him by "the full and equal benefit of all laws as is enjoyed by white citizens" under § 1983. Plaintiff alleges that Defendant discriminated against him on the basis of race by offering him the Energy Education Specialist position at a salary that they knew he would reject in order to re-post the position and offer it to a Caucasian applicant. Although not explicitly clear from the Amended Complaint, the Court interprets this as a claim for racial discrimination in hiring under § 1983 based on a violation of the Equal Protection Clause of the Fourteenth Amendment.

Defendant argues that, if the Court even considers this claim, Plaintiff fails to establish a prima facie case of racial discrimination, and even if he could, Defendant had a legitimate, nondiscriminatory reason for its actions.  The Court agrees.

Section 1983 "governs the relationship between state officials and individuals."  Schanzer v. Rutgers Univ., 934 F. Supp. 669, 678 (D.N.J. 1996).  To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  Clark v. Bd. of Educ., No. 06-2736, 2009 U.S. Dist. LEXIS 46948, at *21-25 (D.N.J. June 4, 2009) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).  A public employee may bring a claim for racial discrimination under § 1983 based on a public official's violation of the Equal Protection Clause of the Fourteenth Amendment.  See Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1079 (3d Cir. 1990).

To succeed on a claim of racial discrimination under § 1983, a Plaintiff must show purposeful discrimination against him on the basis of race.  See Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990); Peace-Wickham v. Walls, 409 F. App'x 512, 525 (3d Cir. 2010).  Where there is no direct evidence of discrimination, the claims are governed by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Ugorji v. N.J. Envtl. Infrastructure Trust, 529 F. App'x 145, 151 (3d Cir. 2013).  Under the McDonnell Douglas framework, Plaintiff has the initial burden of making a prima facie showing of discrimination.  See McDonnell Douglas, 411 U.S. at 802.  The burden then shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for their actions.  Id.  The burden then returns to Plaintiff to show that the defendant's stated reasons were a mere pretext.  See Burton v. Teleflex, Inc., 707 F.3d 417, 426-27 (3d Cir. 2013).

To establish a prima facie case of racial discrimination for failure to hire under § 1983, Plaintiff must demonstrate by a preponderance of the evidence: (1) that he belongs to a protected class; (2) that he was qualified for the position; (3) that despite his qualifications, he suffered an adverse employment action; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position.  See Carr v. New Jersey, No. 09-913, 2012 U.S. Dist. LEXIS 121992, at *6 (D.N.J. Aug. 28, 2012); Tanvir v. Quest Diagnostics, No. 05-1464, 2007 U.S. Dist. LEXIS 71917, at *16 (D.N.J. Sept. 27, 2007); Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).

There is no dispute that Plaintiff is a member of a protected class, as he is African American.  See Rogers v. Alt. Res. Corp., 440 F. Supp. 2d 366, 371 (D.N.J. 2006).  It is also undisputed that Plaintiff was qualified for the Energy Specialist position as he was the highest ranked candidate and was offered the position.

Plaintiff, however, fails on the third element.  Plaintiff has not suffered an adverse employment action.  An adverse employment action must be "sufficiently severe as to alter the employee's 'compensation, terms, conditions, or privileges of employment,' or to 'deprive or tend to deprive [him or her] of employment opportunities or otherwise adversely affect his [or her] status as an employee.'"  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1296-97 (3d Cir. 1997), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  Because Plaintiff cannot claim that he was not offered the Energy Specialist position (he was), he claims instead that the Board offered him the position at a salary they somehow knew he would not accept in order to repost the position in the hope that he would not again apply, so that they could hire a Caucasian applicant at a higher salary.

Plaintiff's "conspiracy theory" does not change the fact that he did not suffer an adverse employment action. Sutton was not singled out and treated less favorably than other, similarly situated applicants. In fact, the exact opposite happened. Sutton was the Board's first choice for the job.[12] Sutton applied for the job, was interviewed by the committee, and unanimously scored the highest of all the candidates. Plaintiff was then offered the job for the Energy Specialist position and explicitly declined it based on the compensation packaged offered.[13]

Plaintiff never suffered an adverse employment action because he never applied for the position again. Plaintiff nonetheless claims that after its lowball offer to him, the Board offered the job to Jeffrey Strangio, a Caucasian male, at a higher salary. There is no evidence, however, besides his own self-serving deposition testimony, to even prove that Strangio was offered a higher salary than him. This in insufficient to withstand a motion for summary judgment. See Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) ("[C]onclusory, self-serving affidavits [and testimony] are insufficient to withstand a motion for summary judgment . . . . In this case, [Plaintiff's] own, sworn statements are insufficient to survive summary judgment."). And even if the Board did offer Strangio a higher salary, the fact that Plaintiff had already rejected

---

[12] The Court also notes that the fact that the Board, who were the final decision makers on Plaintiff's employment, was comprised of all African Americans weakens any inference of discrimination. See Dungee v. Northeast Foods, 940 F. Supp. 682, 687 n.3 (D.N.J. 1996) (explaining that in the context of a discriminatory failure to hire case, "the fact that the final decision maker and both interviewers are members of the plaintiff's protected class (women) weakens any possible inference of discrimination."); Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 1002 (5th Cir.), cert. denied, 502 U.S. 868 (1992) ("[In] a Title VII case alleging discrimination because of race, proof that all of the decision makers were members of the same race as the complaining employee would considerably undermine the probability that race was a factor in the employment decision.").

[13] The reason given to Sutton for the offer at his current salary, as opposed to $83,699, was that the Board members were not comfortable paying anyone that type of salary, which was higher than many teachers in the District, who, unlike Sutton, possessed college degrees. Def. Statement ¶ 32.

the position and declined to apply again, without more, is insufficient to show an adverse employment action.

Moreover, after Strangio declined, the job was subsequently offered to another African American candidate, Del Pera Baylis.  She also declined the offer.  Finally, the Board reposted the job for a third time stating that the salary would now be "determined by the district."  Again, Sutton did not reapply for this position.  Ultimately, the Board, in order to attract a qualified candidate and fill the position, set the salary range at $53,389.00 to $72,615.00.  On June 19, 2012, over six months after Sutton had declined the position, the Board approved the hiring of Michael Pate, a Caucasian male, at a salary of $72,000.00.  Thus, Plaintiff has failed to establish that Defendant's actions constitute an adverse employment action.  Accordingly, Plaintiff has not presented a prima facie case of racial discrimination.

Even if Plaintiff could somehow establish a prima facie case of discrimination (which he cannot), his claim would still fail.   Defendant provided a legitimate, non-discriminatory reason for its actions.  The Board sought to hire someone else because Sutton had declined the job and they needed to fill the position.  The Board could not even consider Sutton when it re-posted the listings because he never reapplied.

In order to prevail, Plaintiff would need to demonstrate that Defendant's reason is mere pretext.  "Pretext cannot be established based on speculation and mere conclusory allegations." Jordan v. Allgroup Wheaton, 218 F. Supp. 2d 643, 651 (D.N.J. 2002), aff'd sub nom., 95 F. App'x 462 (3d Cir. 2004).  Rather, in order to defeat summary judgment at this stage, Plaintiff must point to "some evidence, direct or circumstantial, from which a reasonable finder of fact could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause

of the employer's action." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).  Plaintiff fails to do this.  He only points to his self-serving disposition testimony and subjective beliefs and speculations that Defendant's engaged in racial discrimination.  He does not offer any documents or other testimony.  This is insufficient to establish pretext.  Accordingly, summary judgment is granted for Defendant on Count I.[14]

### B.    Count II—Plaintiff's Retaliation Claim Under NJLAD

Plaintiff's claim under NJLAD is based upon his allegation that the Board retaliated against him by relocating him from its Facilities and Grounds Department to the Library because he filed a discrimination charge with the EEOC on March 14, 2012.  Am. Compl., Count Two ¶ 2.

Defendant contends that this claim cannot survive summary judgment because Plaintiff cannot show that his reassignment to the Library constituted an adverse employment action or that there was a causal connection between the reassignment and the EEOC charge.  Defendant contends that it had a legitimate, non-retaliatory reason for its decision to move Plaintiff to the Library—to reasonably accommodate his medical and work restrictions.  The Court agrees.

Just like the § 1983 claim, Plaintiff's New Jersey Law Against Discrimination ("NJLAD") retaliation claims are governed by the burden-shifting framework articulated in <u>McDonnell Douglas</u>.  <u>See</u> <u>Smith v. Twp. of E. Greenwich</u>, 519 F. Supp. 2d 493, 506 (D.N.J. 2007), <u>aff'd</u>, 344 F. App'x 740 (3d Cir. 2009); <u>Bertolotti v. AutoZone, Inc.</u>, No. 14-2315, 2015 U.S. Dist. LEXIS 126224, at *32 (D.N.J. Sept. 22, 2015).

---

[14] To the extent Plaintiff also argues that the discrimination he suffered was pursuant to an official policy or custom of the Board, this claim is rejected.  Plaintiff has not presented any evidence that the Board had established a policy or approved any policy, custom, or practice of hiring only white males in newly-created positions in the District.  In fact, the District has several policies promoting the exact opposite—a policy on recruitment, selection and hiring, and a non-discrimination/affirmative action policy that expressly prohibits discrimination in the employment process based on race.  <u>See</u> Def. Statement ¶¶ 97-100.

In order to establish a prima facie case of retaliation under the NJLAD, the plaintiff must show (1) that he engaged in a protected activity known to the employer; (2) he was thereafter subjected to an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action.  Jackson v. Gannett Co., No. 08-6403, 2011 U.S. Dist. LEXIS 85284, at *21 (D.N.J. Aug. 3, 2011) (citing Victor v. State, 203 N.J. 383 (2010) and Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81 (2008)).

An employee engages in protected activity under the NJLAD when he or she opposes or challenges any practice or acts rendered unlawful under the statute.  Young v. Hobart W. Grp., 385 N.J. Super. 448 (N.J. Super. App. Div. 2005).  The parties do not contest that Plaintiff engaged in protected activity by filing an EEOC charge for racial discrimination.  See Barber v. CSX Distribution Servs., 68 F.3d 694, 701 (3d Cir. 1995) (observing that protected conduct includes both the filing of formal charges of discrimination with the EEOC and "informal protests" or "complaints to management" about "discriminatory employment practices").

As to the second prong, in order to constitute an adverse employment action under the NJALD, "the retaliatory conduct 'must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Jackson, 2011 U.S. Dist. LEXIS 85284, at * 21 (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)).  Importantly, "not everything that makes an employee unhappy qualifies as retaliation, for otherwise, minor and even trivial employment actions that an irritable chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."  Id.

Plaintiff claims that his transfer to the Library after filing an EEOC complaint constitutes an adverse employment action.

The undisputed record, however, shows that Plaintiff's relocation to the Library, where there was an elevator, was only a temporary measure taken to accommodate his physical restrictions set forth by Plaintiff's doctor, which prohibited climbing, use of ladders, kneeling, and carrying anything greater than ten pounds.  There is no evidence that the transfer resulted in a decrease in salary or benefits.   There is no evidence that the transfer resulted in any other significant change in employment status, rank or position.   Except for the functions that contravened his doctor's orders, Plaintiff's job duties and responsibilities remained the same.  See Swangin v. Public Schs. of Edison Twp., No. 03-4058, 2007 U.S. Dist. LEXIS 31580, at *35-36, (D.N.J. Apr. 30, 2007) ("Acts such as transfers do not constitute adverse employment actions unless they result in a 'significant change in employment status,' including . . . reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'") (internal citation omitted).  Further, Plaintiff has not presented evidence to show that this new location was particularly inconvenient for or placed a burden on Plaintiff.[15]  Even viewing the evidence in the light most favorable to Plaintiff, a transfer, without more, is not an adverse employment action.  See Hussein v. Genuardi's Family Mkts., No. 00-4905, 2002 U.S. Dist. LEXIS 430, at *19 (E.D. Pa. Jan. 15, 2002); see also Shepherd v. Hunterdon Developmental Ctr., 175 N.J. 1 (2002) ("The transfer itself 'was insufficient to establish an adverse employment decision.'"); Schott v. State, No. A-2612-04T1, 2006 N.J. Super. Unpub. LEXIS 2577, at *25 (App. Div. July 13, 2006).

Even if Plaintiff was able to establish a prima facie case for retaliation (which he cannot), Defendant has articulated a legitimate, non-discriminatory reason for its actions.  Defendant would

---

[15] Plaintiff claims that the Library had no light, air conditioning and that the elevator was broken. However, he fails to provide any evidence to that effect besides his own deposition testimony, which is insufficient.  See Gonzalez, 678 F.3d at 263.

have transferred Plaintiff regardless of the EEOC complaint.  The reason for the transfer was to accommodate Plaintiff's physical restrictions set forth by his doctor.  Plaintiff has failed to present any evidence, besides speculation, to rebut the Board's legitimate decision and show that the Board's decision to temporarily move him was a pretext for retaliation.  See Chambers v. Heidelberg USA, Inc., No. 04-583, 2006 U.S. Dist. LEXIS 32334, at *14 (D.N.J. May 5, 2006) ("Speculations, generalities, and gut feelings, however genuine, do not allow for an inference of discrimination to be drawn when they are not supported by specific facts.").  Instead, Plaintiff merely regurgitates various court decisions interpreting the NJLAD without any explanation or analysis as to how it applies to the case at bar.  This is insufficient.  The Court finds that the facts presented, when read in the light most favorable to Plaintiff, do not support Plaintiff's retaliation claim.  Therefore, Defendant is entitled to summary judgment with respect to Count II.

### C.    Count Three—Plaintiff's Retaliation Claim under § 1983

Count Three asserts similar allegations to Plaintiff's NJLAD claim.  Plaintiff alleges that he was retaliated against for filing charges with the EEOC which deprived Plaintiff of the right to make and enforce contracts.  While not explicitly clear, the Court interprets this claim as one for retaliation under § 1983.[16]  Am. Compl., Count Three.

Section 1983 provides a cause of action when a state actor retaliates against an individual for participating or engaging in conduct protected by the First Amendment.  See Bradshaw v. Twp. of Middleton, 145 F. App'x 763, 766-67 (3d Cir. 2005).  A plaintiff asserting a § 1983 First

---

[16] To the extent Plaintiff sought to bring Count Three under § 1981, it fails.  "In a retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation."  Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police, 604 F.3d 788, 798 (3d Cir. 2010)).  Because the Court has already found that Plaintiff does not have a viable claim under § 1981, Plaintiff's claim for retaliation under § 1981 fails.

Amendment retaliation claim must show: "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). If these elements are satisfied, a defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity. See Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002).

Plaintiff fails to establish the second two factors. After filing the March 2012 EEOC charge, only subsequent event that could possibly constitute a retaliatory action was Plaintiff's transfer to the Library, which occurred four months after. Plaintiff, however, presents no evidence that transferring him to the library was a retaliatory act for which § 1983 liability may attach. Aside from his own deposition testimony, Plaintiff submits no evidence—no testimony, documents, or affidavits—to show the Board's transfer was made in retaliation. Plaintiff also fails to present any evidence that the transfer has had any negative effect on him or that it would deter a "person of ordinary firmness" from exercising First Amendment rights. Plaintiff even filed a second EEOC charge in October 2012. Finally, the record does not support a causal connection between the filing of the EEOC charge and Plaintiff's transfer. Pure speculation is not enough to survive summary judgment motion for retaliation. See Gonzalez, 678 F.3d at 263.

Even assuming that Plaintiff could meet his burden, Defendant has overcome it by adequately demonstrating it would have transferred Plaintiff regardless of the EEOC charge. As discussed, Defendant was required by law to reasonably accommodate Plaintiff's physical restrictions. Plaintiff's transfer is not dependent on any retaliatory animus and would have occurred regardless of any protected activity by Plaintiff. The decision to transfer Plaintiff was

made to comply with Plaintiff's request for sedentary duty and to accommodate his disability.  If the Board had not temporarily transferred Plaintiff, he could have alleged a failure to accommodate claim.  Plaintiff cannot have it both ways—he cannot request an accommodation then complain that his temporary transfer to accommodate the disability is somehow retaliatory.

In the complete absence of any facts to support this claim, summary judgment is granted in favor of Defendants on Count Three.

### IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**.  This matter is therefore dismissed and the case is closed.  An appropriate order will follow.

Date: December 22, 2015                              */s Madeline Cox Arleo*_____
                                                     **HON. MADELINE COX ARLEO**
                                                     **UNITED STATES DISTRICT JUDGE**